MICHAEL S. MITCHELL, petitioner-appellant,

v.

CATHERINE MITCHELL, defendant-respondent.

[Submitted November 10th, 1924.    Decided January 19, 1925.]

1. Although the opening of a final decree of divorce in chancery on the ground of surprise, fraud, &c., is a matter of discretion, it is a matter of judicial discretion, and, in a proper case, may be reviewed on appeal.

2. The old equity practice in cases where it was sought to review a final decree after the time to appeal had expired, was to petition for leave to file a bill of review, but the simpler course of a direct petition to open the decree is now recognized.

3. After time to appeal has expired, a final decree will not be opened except on the ground of newly-discovered evidence, or where some special equity appears, such as fraud or an ignorance of the proceeding for which petitioner is not responsible.

4. On the evidence in this case, held, that defendant knew of the pendency of the suit, evaded service of process, secured an extension of time to answer, refused to employ counsel, and waited for over a year after final decree before applying to open it, and that she had shown no fraud, and neither surprise nor merits.

On appeal from an order advised by Vice-Chancellor Lewis, whose opinion is reported in 2 N. J. Adv. R. 1309; 96 N. J. Eq. 29.

Appellant is the petitioner in a suit for divorce for desertion, in which decree nisi was entered July 12th, 1918, and final decree January 13th, 1919. On January 29th, 1919, he remarried. On February 2d, 1920, the wife petitioned for a reopening of the decree alleging, in substance, that she was never legally served with process and had no knowledge of the suit until November, 1919, and denying the desertion. Order to show cause was made on February 2d, 1920, and proofs were taken. The matter seems to have been carried

along until June 15th, 1923; when the order now·appealed from was made. It directs "that the final decree bearing date and entered in this cause as aforesaid be and the same be (*sic*) opened to the extent that the defendant be permitted to put in a defense, and the question of whether said decree should be wholly rescinded be reserved until the conclusion of the whole case."

*Mr. Merrill Lane,* for the appellant.

*Mr. Alexander Simpson,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

1. At the outset, it is argued for the respondent on this appeal, defendant below, that the order appealed from, being discretionary in its nature, is not appealable. Such is, of course, the general rule touching discretionary matters, but the present case is within one of the recognized exceptions to that rule. Cases in point are *Watkinson* v. *Watkinson, 68 N. J. Eq. 632; Englehard* v. *Schroeder, 94 N. J. Eq. 778; In re Roberson, 95 N. J. Eq. 672.*

We deem that the appeal is properly before us.

2. Appellant then urges that the procedure by petition and order to show cause was irregular and unlawful, inasmuch as the time for appeal from the main decree had expired. As to this, it might be sufficient to say that apparently no objection to this procedure was made in chancery, as noted in the opinion of Vice-Chancellor Lewis. But it will do no harm to add that we concur in his view that the practice by petition should be recognized in aid of simplicity and directness of procedure, where the petition shows on its face some special equity, which, if substantiated, would avoid the bar of the limitation. *In re Roberson, ubi supra.*

3. But appellant urges, further, that no special equity to avoid the limitation appears.

This proceeding is substantially tantamount to one by way of bill of review, and the rules applicable in that class of cases were carefully enunciated by the late Judge Vroom in the *Watkinson Case, 68 N. J. Eq.* (at *p. 642*). He said: "The time of appeal having expired when this application for leave to file the bill of review was made, the petitioner was barred unless her case could be brought strictly within the exception of newly-discovered evidence, or of some special equity that would give the court the discretionary power to make the order." He then mentions two of such "special equities," viz.—(1) fraud, and (2) "ignorance of the petitioner [defendant] of the existence of a decree of divorce until after the time for appeal had expired.". A reference to the introductory statement, *supra,* will show that this last is the precise ground on which the application is rested, with an intimation of fraud in concealing from defendant the existence of the suit until after decree.

4. This brings us to the merits, and on that phase of the case we find ourselves unable to concur in the result reached below. We have examined the evidence with care, and to us it seems rather obvious that the defendant was unwilling to live with her husband and face life with him as any normal wife would. She was unwilling to go to California with him; she was unwilling to live with him at Union Hill; sometimes she was at Weehawken, sometimes in New York City. When the citation in divorce was issued, there was an apparently *bona fide* attempt to serve it in this state. The papers were given to the sheriff, and he deputized a special deputy whose integrity is in no way impeached, to make service. Petitioner made an affidavit at the time giving both the Weehawken and the New York address correctly. The deputy made an affidavit showing repeated attempts to make service at Weehawken without result. There is strong reason to believe that defendant had wind of the suit and was evading service. Petitioner's counsel then took out an order of publication and substituted service as prescribed by rules of court. Pursuant thereto, he mailed a certified copy of the petition and order by registered mail to defendant at

her New York address, using the name of his office stenographer for the return address, because he feared defendant would refuse to receive the letter, suspecting it contained divorce papers. The letter came back marked "Removed; no address," although defendant owned the house at that address and her brother lived there. We think she knew or believed that a suit had been begun and was evading service. This view is supported by the telegram received by the clerk in chancery on August 20th, 1917, the last day for appearance and answer, and which reads as follows, a word is evidently omitted:

"Please [arrange?] that I have additional time to answer in Michael S. Mitchell petitioner and Catherine Mitchell defendant number 32-230 have had no papers served on me my address is 775 East Boulevard Weehawken N. J.

"CATHERINE MITCHELL."

Mrs. Mitchell denied sending this message, but her denial is not convincing. Either she sent it, or someone did for her. The clerk sent this telegram to petitioner's solicitor, and in the end an order was made on December 17th, 1917, giving twenty days further time to answer. This, with the petition and other papers, was mailed to the Weehawken address stated in the telegram. The delay until December is explained by a letter from the solicitor to the advisory master that defendant had called on him about the suit and that he had allowed further time to answer.

He made two affidavits to this effect and was also sworn as a witness, and we see no reason to doubt his statement that she came to see him about the case and that he urged her to employ counsel, as he was going on with the suit. Any deception of the court in a matter of this kind would be ground for disbarment, and we fail to find any indication that the solicitor falsified the facts. The defendant never employed a New Jersey lawyer; she consulted a New York lawyer, who, of course, is not responsible to our courts, and who maintains that neither he nor Mrs. Mitchell knew a suit was in progress, but we think his memory is

defective.   We think she was aware of the notice published in the paper; that she evaded service in Weehawken and New York; that she sent or instigated the telegram to the clerk, and simply refused to recognize the existence of a suit for some reason best known to herself.

There are other allegations of fact in the case, but we find it needless to discuss them at length.   The questionnaire incident is of little consequence; petitioner was legally married at the time and answered responsively; that he desired to avoid the draft is denied.   The defendant accuses him of adultery with the woman to whom he is now married, but this claim is not satisfactorily made out.

We conclude that this defendant knew of the suit and abstained from appearing and defending therein; that so far from petitioner attempting to obtain a secret decree, he and his counsel used all reasonable efforts to make service of papers in fact, and that the present proceeding is in effect an attempt by a wife, who refused to live with her husband and deserted him, to prevent his living with anyone else, and to break up a marriage contracted by him under the sanction of a decree of divorce after waiting until a decree *nisi* had ripened into a decree absolute, and that decree and a second marriage had stood unchallenged for a year.   On any sound view of private right and public policy such an attack should be discountenanced.

The order brought up will be reversed and the cause remanded, with directions to dismiss the petition, with costs, in this court and in chancery.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 14.