In the matter of the application of WILLIAM H. LEUPP to resign and be discharged as successor-trustee under a certain deed of trust made to Solon Humphreys, now deceased, by Grace L. Furniss and William P. Furniss, dated July 31st, 1882.

[Decided March 9th, 1931.]

*Messrs. McCarter & English,* for Columbia Trust Company.

*Mr. Merritt Lane,* for B. Alice Furniss, individually and as administratrix.

*Mr. James J. Gibb,* for B. Alice Furniss, administratrix of the estate of William Ponsonby Furniss, and individually.

*Mr. J. Emil Walscheid,* for Randolph Perkins, retiring trustee.

*Messrs. Collins & Corbin,* for the New Jersey Title Guarantee and Trust Company.

LEWIS, V. C.

This matter is before me on exceptions to a special master's report with respect to his findings that (a) the premiums paid on the trustee's bond, $1,761.74, were properly charged to principal; (b) the commission allowed and paid to the trustee, $6,311.12, was properly charged to principal; (c) the loans to Clinton C. Furniss, aggregating $4,240.72, were properly carried as an investment of part principal; and (d) the item of "Court Costs," $340.08, paid by the trustee, constituted a proper charge against the trust fund. All of the exceptions were filed by the Columbia Trust Company, as trustee of Clinton C. Furniss, which alone excepts to said findings and report.

An additional aspect of this case presents itself in the form and as to the propriety of the petition submitted on behalf of Alice B. Furniss, individually and as administratrix of the estate of her deceased husband, William P. Furniss, wherein it is asserted that "the master's report filed herein is in error in this: that the said master has recommended an approval of the account of the trustee, which account shows that William P. Furniss should have received income amounting to approximately $2,750, which he did not receive and which was erroneously paid to Grace L. Furniss," and then concludes with a prayer "that said account may be corrected and the accountant directed to pay to your petitioner the sum aforesaid." I shall first deal with and dispose of this phase of the case.

The evidence discloses that Randolph Perkins, Esq., resigned as trustee on November 24th, 1924, and filed his final

account, accompanied by his petition for its approval, on October 4th, 1926, at which time Grace L. Furniss and William P. Furniss, the settlers of and life tenants under the trust deed, and the latter's children, Ruth MacFarland and Clinton C. Furniss, the contingent remaindermen thereunder, and the latter's trustee, the Columbia Trust Company, comprised all of the parties in interest.

Upon the filing of said account an order was entered by this court requiring all of said parties—petitioner, Alice B. Furniss, then having no interest in said trust, since her husband was still alive—to show cause why said account should not be approved. The Columbia Trust Company, as trustee of Clinton C. Furniss, and the New Jersey Title Guarantee and Trust Company, alone, filed answers and exceptions to its approval, whereupon, on February 9th, 1927, an order of reference was directed to one of the special masters of this court to ascertain and report with reference to the matters so referred to him, and who, after considering the evidence adduced, filed his report on January 6th, 1930. An order to show cause why said master's report should not be confirmed was allowed and on its return day, February 17th, 1930, the petition, now under consideration, was submitted on behalf of petitioner.

The filing and allowance of said petition is opposed by the retiring trustee for several reasons, amongst which are: (a) It is not properly before the court; (b) it does not conform to the established practice pursued in opposing the confirmation of such a report; (c) it is untenable, since petitioner had not filed any exceptions to the said report; and (d) it fails to disclose any facts from which it may fairly be inferred that the master committed any error, being predicated upon petitioner's mere conclusions. My consideration of the petition, and the arguments advanced both for and against its allowance, has led me to the conclusion that the ends of justice will be best served by disposing of it in the light of all of the surrounding undisputed facts.

The petition avers that the master failed to find and report that the distribution of income, as reflected by the re-

tiring trustee's account, was incorrect. Petitioner's counsel argues that accountant distributed *all income* derived between William P. Furniss, whom she now represents, and Grace L. Furniss in the proportion that $41,359.72 bears to $61,359.72, whereas said ratio of division should have only been applied to income derived from the original principal, $102,759.44, and that income derived from all additions to said original principal should have been equally divided between said persons.

An examination of the deed of trust discloses that after conveying certain specific securities valued at $102,719.44, it provides:

"And also that contingent or dependent interest which said parties of the first part have or may have in the so-called Louise M. Furniss trust, * * * and which upon her death, by the terms of said trust deed, shall be paid to the said parties of the first part. should they, or either of them, be then surviving, *the same to be subject to the same conditions and provisos as expressed herein with reference to the principal fund herein transferred.*

"To invest, and keep invested, the securities herein transferred, to wit, the securities of the par value of $102,719.44, and to receive and collect the income and interest thereof and the increase thereof, and to pay over the net income thereof semi-annually on the first day of January and July, from and after the day of these presents, to the parties of the first part in the following proportions * * * all differences in the proportional amounts so received by the said parties of the first part, to be adjusted by the trustee, *it being the intent of this instrument to provide for the payment to said Grace Livingston Furniss of the income upon the securities of the par value of sixty-one thousand three hundred and fifty-nine and 72/100 dollars, and for the payment to said William Ponsonby Furniss of the income upon the securities of the par value of forty-one thousand three hundred and fifty-nine and 72/100 dollars; all excess of income without the proportions herein expressed to be adjusted as aforesaid.*"

That the settlers contemplated the likelihood of future additions being made to the original principal from the contingent estates therein specified seems to be clearly manifested by the foregoing excerpts from their own trust deed. It is not disputed that—from July 31st, 1882, when the trust was created, to 1924, when accountant retired as trustee—the principal fund was augmented by additions thereto, aggregating the sum of $71,079.82. It is the income derived

from these additions that petitioner claims should have been divided equally between her deceased husband and Grace L. Furniss, and not in the proportion adopted and pursued by accountant.

In construing the foregoing provisions of the trust deed, I cannot but think that there is manifest wisdom in the old rule, that the law will regard not only that which is expressed but also that which is done by the parties themselves in furtherance of their agreement. Nor does it seem to me that such is ever, in any of its manifold applications, of more worth than when it is employed as a safeguard to a person who, of necessity, has acted upon the strength of the interpretation placed upon said words by the parties themselves, as appears to be the case here.

Accountant, throughout his entire sixteen years of trusteeship, never segregated the income earned by the original principal of $102,719.44 from that derived from the subsequent additions thereto. The beneficiaries under said trust were fully aware and never complained of this fact, but on the contrary expressly sanctioned and approved it. During this entire period, each of the settlers and beneficiaries received and accepted, without complaint or objection, the semi-annual distribution of the income derived from the augmented principal made in the proportion that $41,359.72 bears to $61,359.72.

This method of distribution of income was both acquiesced in and expressly approved of by William P. Furniss, whom petitioner now represents, in a solemn statement signed and acknowledged by him and Grace P. Furniss, the other settler and beneficiary, before a master of this court, as appears by the order of this court, dated October 8th, 1917, approving accountant's intermediary account, which, in part, reads as follows:

"And it further appearing that said Grace Livingston Furniss and William P. Furniss have both filed in this cause a statement duly acknowledged before a master of this court that they have each examined the account of Randolph Perkins substituted trustee, and by said statement do ap-

prove of said account filed, *both as to principal and income thereof and disbursements out of the same,* and of the present securities held by said trustee as shown by said account filed in the office of the clerk in chancery on the 20th day of February, 1917."

This approval was again expressed by both of said persons in another statement signed and acknowledged by them on April 20th, 1922, before a master of this court.

In view of the interpretation placed upon the foregoing provisions of the trust deed by the settlers and beneficiaries themselves, as manifested by their acts of acquiescence and express approval, coupled with a consideration of the other provisions of the trust deed, I am constrained to hold that "excess of income without the proportions herein expressed" can only mean and refer to income received in excess of or in addition to that received on the original principal of $102,719.44; while the words "to be adjusted as aforesaid" can only relate to and mean "in the proportion that $61,359.72 bears to $41,359.72," since that is the only basis for distribution of income which the trust deed provides for.

Even if it could be said that the question as to the method of distribution of income wasn't rendered *"res adjudicata"* by the order of this court of October 8th, 1917, approving the accountant's intermediary account, and incidentally this manner of distribution of income, as therein set forth, nevertheless I am fully satisfied that William P. Furniss, by reason of his acts, deeds and conduct, hereinbefore alluded to, would now be estopped from questioning the propriety of said manner of distribution of income, approved of by himself, even if such were incorrect, and this applies equally as well to petitioner who is merely his representative. *Roarke* v. *Roarke, 77 N. J.. Eq. 181.*

From my consideration of the incontrovertible facts and the attending circumstances, I am satisfied that the petitioner has no legal or equitable rights upon which to base her application or which can in anywise be affected or harmed by a denial thereof, while for me to allow it would inevitably result in further prolonging this already unduly protracted

litigation, with the attendant possibilities of thus jeopardizing the rights of all parties in interest. All of the facts heretofore alluded to by me require a dismissal of her petition and a denial of her application, and such will be the order of this court.

Passing now to the consideration of the exceptions to the master's report. The evidence discloses that on July 31st, 1882, Grace L. Furniss and William P. Furniss made a deed of trust to Solon Humphreys, as trustee, who was subsequently succeeded as such by William H. Leupp. By an order of this court, dated September 21st, 1908, said William H. Leupp, upon his application, was discharged, and Randolph Perkins, Esq., the present accountant was appointed as trustee. By an order made on November 24th, 1924, this court accepted the resignation of said Perkins, as trustee, and appointed the New Jersey Title Guarantee and Trust Company in his place and stead, and also directed said Perkins to file his final account as trustee, specifically ordering, however, that he and his surety remain liable under their bond, until his said account be approved of by said New Jersey Title Guarantee and Trust Company, the substituted trustee.

Pursuant to the last-mentioned order, Perkins, on October 4th, 1926, filed his final account and obtained an order to show cause why it should not be approved and confirmed. The Columbia Trust Company, as trustee for Clinton C. Furniss, one of the parties in interest, having filed exceptions to said account, an order was made by this court whereby the said account and exceptions were referred to one of the special masters of this court to report thereon. After several hearings, the said master reported adversely to all of said exceptions, excepting only the thirteenth, with reference to which his report was favorable to the extent of $337.30. Upon the filing of said report, the accountant applied to have same approved and confirmed, and again the Columbia Trust Company filed exceptions thereto, all of which are particularly set forth at the beginning of this opinion.

As to the first of these exceptions: The exceptant contends that the entire premiums paid on the trustee's bond should

have been charged against income, and not merely one-half thereof as was done by the accountant, he having charged the other one-half against principal. It is this allocation which the exceptant contends is improper and which alleged erroneous charge upon the principal should be restored to it. In support of its contention, exceptant argues that, inasmuch as the order of September 21st, 1908, appointing accountant as trustee and requiring him to furnish a bond, fails to specify whether the premiums on said bond should be paid out of principal or income, the provisions of the trust deed must govern as to the source from which said payment is to be made, and then proceeds to point out that said trust deed provides that "other necessary expenses incident to or growing out of the execution of said trust to be allowed and paid out of such *interest, income* and *increase.*"

Exceptant then argues that the word *increase* as there used means "gain or increase earned on the principal and not an augmentation of the principal itself." Having in mind the other provisions of the trust deed, as well as the undisputed evidence before me, I am inclined to believe that the construction contended for is a strained, unreasonable and untenable one.

In addition to the property therein specified, the trust deed also conveyed the settlers' interest in and to the so-called "Louise M. Furniss, trust," which, however, was contingent in character. The words or terms *principal, increase thereof* and *accrued income thereon* are mentioned in different parts of the trust deed. That the settlers contemplated *increases* or *additions* to the principal of the trust being made in the future is manifested by the deed itself. As a matter of fact, increases or additions were actually made, from time to time, to the principal since the creation of the trust. Hence, it is more probable and reasonable to believe that the settlers by the word *increase* meant *an increase in the principal,* rather than an *increase in the interest or income.*

As hereinbefore stated, both the trust deed and the order requiring the bond were entirely silent as to the fund from

which bond premiums were to be paid. Without any definite pronouncement to guide him, accountant undoubtedly considered that, since principal and income were both benefited and protected by the bond, it would be most equitable that the premium on said bond should be charged against both principal and income, and accordingly so did. This allocation of bond premiums was set up by accountant in his intermediary account filed in this court on February 10th, 1917, covering the period from the time of his appointment as trustee up until December 31st, 1916. After due notice to all parties in interest, including exceptant's *cestui que trust,* said intermediary account was, by the order of this court, dated October 8th, 1917, approved and confirmed.

From that order, no appeal, nor any other action seeking its reversal or modification was ever taken by exceptant's *cestui que trust,* or any of the other parties in interest. Consequently, its verity, validity or binding effect is not open to impeachment or contradiction by any of the parties thereto or their privies in this collateral proceeding (*West New York Improvement Co.* v. *West New York, 88 N. J. Eq. 571; Crawford* v. *Lees, 84 N. J. Eq. 324; Podesta* v. *Binns, 69 N. J. Eq. 387; Diehl* v. *Page, 3 N. J. Eq. 143; Plume* v. *Howard Savings Institution, 46 N. J. Law 211*), since such can only be done by a direct assault upon or by an appeal from said order. *West New York Improvement Co.* v. *West New York, supra; National Docks, &c., Railway Co.* v. *Pennsylvania Railroad Co., 52 N. J. Eq. 58; McCahill* v. *Equitable Life Assurance Society, 26 N. J. Eq. 531.*

It is a doctrine of universal acceptation that the judgment of a competent court of jurisdiction is, until reversed, final and conclusive upon the parties, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. *In re Walsh's Estate, 80 N. J. Eq. 565; Shearman* v. *Cameron, 78 N. J. Eq. 532; Sarson* v. *Maccia, 90 N. J. Eq. 433; West New York Improvement Co.* v. *West New York, supra; Rosen-*

*stein* v. *Burr, 80 N. J. Eq. 424; Margolies* v. *Goldberg, 101 N. J. Law 75; Nachamkis* v. *Goldsmith, 101 N. J. Law 356; Cromwell* v. *County of Sac, 94 U. S. 351; 24 L. Ed. 195; Sawyer* v. *Woodbury 73 Mass. 499.* This doctrine is not a mere rule of procedure, but one of substantial justice, unlimited in its operation, and the enforcement of which must be exacted whenever it is necessary for the protection and security of rights, as well as for the preservation of the stability and repose of society. *City of Paterson* v. *Baker, 51 N. J. Eq. 49; Putnam* v. *Clark, 34 N. J. Eq. 532.* To do otherwise would be to displace this salutary principle of our jurisprudence and render it of little or no value.

In his intermediary accounts filed in 1917 and 1922, accountant specifically set up the identical allocation of bond premiums, which now constitutes the subject of complaint. The propriety or legality of said allocation was a matter entering into the court's determination to approve and allow said accounts, and hence, of necessity, the order of this court, dated October 8th, 1917, approving the first of these accounts, determined this issue adversely to exceptant's present contentions, and thereby rendered it *res adjudicata* as against exceptant's *cestui que trust,* he having been one of the parties involved in said proceedings. In conformity with this judicial declaration, accountant continued to allocate said bond premiums in the manner thereby sanctioned and approved. It would thus seem that exceptant is now estopped and precluded from questioning the propriety or legality of said allocation, during the years following, as well as those preceding, the making of said order, in conformity with which all parties in interest acted.

Moreover, it seems to me that, even if the allocation of these premiums were improper, accountant could not, under the circumstances here present, be compelled to reimburse the principal to the extent of said improper charges, the authorities all hold that the liability which devolves upon a trustee by reason of his accepting the trust may be limited by the terms of the instrument creating the trust. *Tuttle*

v. *Gilmore, 36 N. J. Eq. 617.* The limitation as to liability contained in the trust deed under consideration reads:

"17. The said trustee, party of the second part, shall not be responsible except for gross negligence, actual fraud, or willful misfeasance of said parties of the first part."

Neither fraud, gross negligence nor willful misfeasance has been charged nor proven against accountant in making said allocations of bond premiums. On the contrary, the undisputed evidence dispels even the slightest inference thereof, and fully satisfies and convinces me that accountant, in making such allocation, did so in good faith and in full obedience to the order of this court, which he was, in duty, bound to obey and respect. *Cooper* v. *Cooper, 103 N. J. Eq. 416; Cape May, &c., Railroad Co.* v. *Johnson, 35 N. J. Eq. 422.*

Judged in the light of the existant facts and the law applicable thereto, I am of the opinion that the determination of the special master, denying and overruling the exception as to this item, was proper, by reason whereof the present exception thereto is denied and overruled.

Now taking up the second of these exceptions whereby exceptant contends that the sum of $6,311.12 paid to accountant for commission was improperly charged to principal instead of to income. In support of its contention, exceptant points to that part of the trust deed wherein it is provided that commissions "should be allowed and paid out of said interest, income and increase," and then further argues that even if commissions are payable upon principal, nevertheless same are to be made out of income.

But, this contention overlooks the order of this court of September 21st, 1908, appointing the accountant as trustee, which, after making provision for his fees and commissions, provides "which said allowances shall be taken and paid from *the principal itself or the income,* as the case may be, which said trustee shall have paid out in the execution of his trust." Through their solicitors, McDermott & Enright, all of the parties in interest, being *sui juris,* including ex-

ceptant's *cestui que trust,* affixed their consent to the making of said order, which still remains in full force and effect.

It also appears, and is undisputed, that the payment of said commissions to accountant was authorized by an order of this court, dated September 30th, 1919, which, after fixing the amount of said commissions, provides that he (accountant) "pay same over to himself out of the *principal* of the said estate." This order still remains in full force and effect, no appeal having ever been taken therefrom, and is not here open to attack or impeachment. *West New York Improvement Co.* v. *West New York, supra; In re Walsh's Estate, supra,* &c.

But exceptant now claims that said order was made without notice to its *cestui que trust.* This contention, however, is untenable, since it is inconsistent with and directly contrary to said order which recites the giving of due notice to all parties in interest, including exceptant's *cestui que trust.* It is now well settled both upon principle and by authority that such a recital is conclusive upon the parties thereto in a collateral attack upon said order. The following references will serve to show how extensively the existence of this legal doctrine has been recognized both by the courts of this state as well as those of others. *Plume* v. *Howard Savings Institution, 46 N. J. Law 211; Lippincott* v. *Godfrey, 103 N. J. Law 407; Spring Creek Drainage Dist.* v. *Joliet Highway Commissioners, 238 Ill. 521; 87 N. E. Rep. 394.* Exceptant's *cestui que trust* being bound and concluded by said order, it naturally follows that exceptant itself, being in privity with him in respect to the subject-matter of said litigation, is bound and concluded thereby. *Roarke* v. *Roarke, 77 N. J. Eq. 181; 34 Corp. Jur. 1009, 1010.*

In the face of the orders above referred to, I am of the opinion that, even if exceptant's contentions were sound, as to which I here need express no opinion, it would nevertheless be estopped and precluded from raising them. To hold otherwise, would be tantamount to permitting exceptant, by a collateral attack, to contradict and impeach the verity,

validity and binding effect of said orders, both of which still remain in full force and effect; a practice which all of the authorities have steadily set their face against. *Shearman* v. *Cameron*, *78 N. J. Eq. 532; Sarson* v. *Maccia, 90 N. J. Eq. 433; In re Walsh's Estate, supra; Rosenstein* v. *Burr, supra; Margolies* v. *Goldberg, supra; Nachamkis* v. *Goldsmith, supra.*

After a careful consideration of all of the foregoing, I am constrained to agree with the findings of the special master as to this item, by reason of which the exceptions interposed to his report with respect thereto must be denied and overruled.

Proceeding now to the third exception, wherein exceptant charges that the item set up as a part of the principal account under the title of "Clinton Furniss Notes," amounting to $4,240.72, was not a proper investment of principal. Exceptant argues that since investments of principal in the form of notes are not authorized by the provisions of the trust deed, these items are improper, should be disallowed, and accountant made to account to the extent thereof.

The evidence discloses, and it is undisputed, that this item consists of loans or advances, plus interest thereon, which, from time to time, were made by accountant to exceptant's *cestui que trust,* upon the latter's request and with the consent of all other parties in interest, the said borrower, in turn, executing and delivering to accountant his promissory notes evidencing his said indebtedness to the estate. On May 13th, 1914, exceptant's *cestui que trust* made and delivered to accountant a writing wherein he acknowledged his indebtedness to the latter in the sum of $3,600 and whereby he transferred to the latter, as security for the repayment of his said indebtedness, the sum of $3,600, out of the moneys and property due and/or to become due to him from the estates therein specified. This indebtedness, with accrued interest, amounted to the sum of $4,240.72 in the year 1917, and was accordingly listed and charged by the accountant against the principal in the intermediary account then filed by him in this court.

Thereafter, all of the parties in interest, excepting exceptant and its *cestui que trust,* entered into and signed a stipulation which, in part, reads:

"5. The indebtedness of Clinton C. Furniss on the notes of $3,600 which he has given, which are part of the principal of the trust fund, should be paid in full, with simple interest to date, and the parties (except the New Jersey Title Guarantee & Trust Company, which is not interested in this matter), will join in presenting to the master an argument that the same should be properly paid by the American Exchange Irving Trust Company, successors to Columbia Trust Company, out of the funds in its hands for said Clinton Furniss, and turned over to the New Jersey Title Guarantee & Trust Company, the substituted trustee, under the direction of the court in this matter. In the event that said moneys are ordered paid and are paid, the sum of $4,240.72 should be credited to the principal of said notes, which is the amount appearing as principal held in 1917 in the retiring trustee's account, and the balance of the moneys paid over should be credited to the income account of the new trustee, and accepted as a full discharge of the obligation of either trustee to collect interest on this item. All the parties hereto (except the New Jersey Title Guarantee & Trust Company, which was not at the time interested in the matter) having consented to the advances comprising the above item, agree that they are estopped from disputing the propriety of said investment of principal, and in the event that the prayer for the payment of this item is denied, all parties hereto agree that this item shall be waived by the parties hereto together with all interest thereon; and in such case Randolph Perkins, retiring trustee, and the New Jersey Title Guarantee & Trust Company, substituted trustee, shall be released, relieved and exempt from any liability to collect this item or to replenish the trust estate to the extent of this item or of any interest thereon."

After due notice to all of the parties in interest, this court, on October 8th, 1917, made and entered an order—wherein is recited the fact that the settlers of and life tenants under the trust had signed and acknowledged a statement before a master of this court, which was filed with the clerk of this court on February 20th, 1917, approving of said intermediary account both as to the principal and income thereof and the disbursements therefrom, and also of the present securities held by said trustee, as shown by said account—whereby said account was approved and allowed.

The loans, notes and interest, constituting the item of $4,240.72, were specifically listed and set out in said inter-

mediary account and were therein charged and carried as a part investment of principal. The propriety of said allocation was, of necessity, one of the facts entering into the court's determination approving and allowing said account, on October 8th, 1917. This order, still being in full force and effect, is immune from impeachment or contradiction in this collateral proceeding, by any of the parties involved in said litigation, one of whom was exceptant's *cestui que trust.*

Taking into consideration the fact that these loans or advances were made to exceptant's *cestui que trust,* at his request, and benefited in by him alone, it is startling, indeed, that he, the last of all, should now be the only one to object thereto. Such conduct shocks the conscience of a court of equity, and should not be countenanced by it.

Even if accountant breached his trust by reason of having made said loans and advances, equity and good conscience demand that exceptant's *cestui que trust,* who not only procured such breach but alone benefited by it, should not be now heard to complain thereof. A court of equity will not countenance—let alone lend its aid in enforcing—any such unjust, inequitable and unconscionable position. "He who comes into equity must come with clean hands" is a principle which furnishes a most important and even universal rule affecting the entire administration of equity jurisprudence as a system of remedies and remedial rights. Wherever a party, seeking some equitable relief, has, in his prior conduct, with reference to the transaction in question, violated good faith or been guilty of any unconscionable conduct, although not amounting to legal fraud, a court of equity, whose very foundation is good conscience, will repel him from its portals, and decline to interfere on his behalf or award him any equitable relief or remedy. *Plummer* v. *Keppler, 26 N. J. Eq. 481; Gluck* v. *Rynda Development Co., 99 N. J. Eq. 788; affirmed, 100 N. J. Eq. 554.*

It is well settled both upon principle and by the authorities, that no *cestui que trust* can claim that to be a breach of trust which has been done under his own sanction, whether

by his previous request or consent or by his subsequent ratification. The application of this wholesome doctrine is, in effect, equivalent to an application of the maxim *"volenti non fit injuria"* which is almost of universal recognition and acceptation in the courts of the United States as well as elsewhere. *Butterfield* v. *Cowing, 20 N. E. Rep. 369; 112 N. Y. 486; Matter of Hall, 58 N. E. Rep. 11; 164 N. Y. 196; Hunt* v. *Gontrum, 30 Atl. Rep. 620; 80 Md. 64; Zimmerman* v. *Frailey, 17 Atl. Rep. 560; 70 Md. 561; Pope* v. *Farnsworth, 16 N. E. Rep. 262; 146 Mass. 339; Preble* v. *Greenleaf, 61 N. E. Rep. 808; 180 Mass. 79.* It is with all the more force and reason that this salutary rule should be applied to a case such as the one *sub judice,* where the *cestui que trust,* by reason of irresistible importunities, not only induced and procured the alleged breach, but was the only one to benefit by it.

Mr. Justice Holmes, in *Pope* v. *Farnsworth, supra* (at *p. 344*), aptly said: "There is no illegality in a *cestui que trust* authorizing an act which otherwise would be a breach of trust towards himself." Here exceptant and its *cestui que trust* in one breath disavow the latter's duty and obligation to repay the loans and advances received by him, and in the other breath appeal to the conscience of this court to aid them in compelling accountant to reimburse the estate for their benefit for that which exceptant's *cestui que trust* himself received and which he legally, equitably and morally is bound to repay. The mere statement of such a position eloquently manifests its extreme and amazing harshness, unfairness and unjustness.

Upon the plainest principles of law and equity, the exception interposed to the master's report, as respects this item, is without merit, and is, therefore, denied and overruled.

Passing now to the last exception, wherein exceptant contends that the accountant should be made to account for an additional sum of $340.08 on the item here referred to as "The Cruikshank money."

Exceptant originally claimed that accountant had received $3,573.43 on this item, whereas in his account he charged himself with $3,373.02. Accountant testified that the latter amount was all that he had ever received, whereupon counsel for exceptant accepted same as being the correct amount. Of this sum, however, accountant charged himself with only $2,695.64, claiming a credit or allowance for the difference, by reason of his having paid $337.20 to himself and $340.08 to Lord, Day & Lord, attorneys, which payments were evidenced by two separate checks, both of which were received in evidence.

Accountant paid the sum of $337.20 to himself for professional services rendered by him as an attorney, in connection with protracted litigation in New York State, from which the trust estate realized the sum of $3,373.02, and from which sum said payments to him and Lord, Day & Lord, the New York attorneys, were deducted. The master found in favor of the exceptants as to the payment made to accountant himself and disallowed a credit therefor, but allowed credit for the payment made to Lord, Day & Lord, overruling the exception thereto.

The item of $340.08, as evidenced by the trustee's check to their order, was paid by accountant to Lord, Day & Lord for the costs of court awarded to them, as the opposing and successful counsel, by the judgment of the New York court of appeals, in the litigation carried on by the trustee for the benefit of the trust estate. The decision of the New York court of appeals, granting judgment for said costs is reported in *230 N. Y. 495; 130 N. E. Rep. 625, sub nomine Furniss* v. *Cruikshank.*

This item was paid pursuant to and in satisfaction of the judgment of a competent court of jurisdiction, entitled to full faith and credit in this state. That costs imposed in litigation carried on by a trustee to collect assets claimed to be due to the estate are payable out of the trust estate, and not by the trustee personally, is well established and uniformly held by all the authorities. *Gulick* v. *Gulick, 42 N. J. Eq. 323; Coutant* v. *Callin (N. Y.), 2 Sandf. Ch.*

*485; Kinmonth v. Grigham, 87 Mass. 270; Amory v. Lowell, 83 Mass. 504; McLaughlin v. Western R. Corp., 12 Cush. 131; Brigel v. Tug River Coal, &c., Co., 73 Fed. Rep. 13.*

Instead of having deducted this item, accountant should have charged himself with it and at the same time should have claimed an allowance or a credit for it in his account. This, undoubtedly, would have been the better and proper way of setting the item up in his account. While the form was not strictly observed, nevertheless it is a familiar maxim of this court that "equity looks to the substance and not to the form." Inasmuch as there can be no question as to accountant's right to a credit or an allowance for this item, the exception against the master's report, interposed in respect thereto, is denied and overruled.

For the reasons hereinbefore indicated, I am satisfied that none of the exceptions interposed to the master's report are well taken, and all of them are, therefore, denied and overruled. I will advise an order approving and confirming the master's report.