On June 19th, 1939, the Commissioner of Banking and Insurance of this state (hereinafter designated as the Commissioner), being in possession of the business and property of the Realty Title Insurance Company (hereinafter designated as the Title Company), pursuant to the provisions of R.S. 1937, 17:30-1 et seq., filed his verified petition praying for an order (a) approving and ratifying the therein detailed plan for effecting a compromise and settlement of the outstanding claims of holders of mortgage guarantees and policies of title insurance against the statutory deposit estate in his hands, (b) directing the surrender of all guarantees upon which claims had theretofore been filed but not established, and (c) for such further relief, instructions and directions as, under the circumstances, may be just and equitable.
Thereupon an order, returnable July 3d 1939, was duly made and entered requiring all parties in interest to show *Page 525 
cause why the relief thus sought should not be granted. On the return day of that order, copies of which had been served upon all parties, within the time and in the manner therein prescribed, counsel for the receivers of the Fidelity Finance and Realty Company (hereinafter designated as the Receivers), the largest stockholders of said title company, interposed objection to the approval of said plan upon the here summarized grounds that the holders of guaranteed bonds and mortgages, or interests therein, have no right nor claim in or to any part of said statutory deposit estate; that the said plan contemplates a diversion of the said statutory deposit estate to persons other than policyholders; that the said plan seeks to effect a transfer of all of the assets constituting the said statutory deposit estate from the Commissioner to another trustee; that the said plan is illegal, unjust and inequitable in that it is designed to transfer to the holders of guaranteed bonds and mortgages, or interests therein, assets the aggregate value of which exceeds the total amount of their claims; and, in addition to the aforesaid objections, counsel then also filed a petition on behalf of said Receivers praying that an order be made setting aside and vacating the orders which had theretofore, on November 10th, 1938, and March 20th, 1939, respectively, been entered in this cause.
By the aforementioned order of November 10th, 1938, a master was appointed for the purpose, among other things, of taking testimony, ascertaining and reporting with respect to (a) the amount of loss, if any, suffered or sustained by persons, firms or corporations holding guarantees of mortgages or guaranteed partial interests therein who had theretofore filed their claims, (b) the liability of the Title Company, if any, to the holders of guaranteed mortgages who had theretofore filed their claims, where the holders of such guarantees may have breached the terms thereof, and (c) the amount for which any of the aforesaid claims should be allowed, or the liability, if any, of the said Title Company to the holders of such guaranteed mortgages which may have been breached.
After the coming in of the master's report, an order was entered on March 8th, 1939, requiring the creditors and stockholders of the Title Company, as well as all other parties *Page 526 
in interest to show cause on March 20th, 1939, why, among other things, an order should not be made approving, ratifying and confirming the aforesaid report. On the return day of said order, no exceptions having been filed to and no objections having been interposed against its confirmation, the said report was thereupon, by the hereinabove mentioned order of March 20th, 1939, in all things approved, ratified and confirmed.
The Receivers now assert and urge various reasons in support of their present application to set aside and vacate the hereinabove mentioned orders of November 10th, 1938, and March 20th, 1939. However, it is entirely unnecessary to here consider or pass upon the tenability or untenability of any or all of these reasons. Suffice it to say that by their present application, the Receivers, in effect and to all practical intents and purposes, seek to have this court grant them a rehearing or review with respect to the propriety and validity of the orders in question. The time for appeal prescribed by statute (R.S. 1937, 2:29-118
and 119) having already expired on July 3d 1939, when the Receivers first filed their petition and made their present application, this court is clearly without power to entertain it (Watkinson v. Watkinson (Court of Errors and Appeals,1905), 68 N.J. Eq. 632; 60 Atl. Rep. 931; Sparks v.Fortescue (Court of Errors and Appeals, 1909), 75 N.J. Eq. 586; 73 Atl. Rep. 595; Boyer v. Boyer, 77 N.J. Eq. 144,76 Atl. Rep. 309; Mitchell v. Mitchell (Court of Errors and Appeals,1925), 97 N.J. Eq. 298; 127 Atl. Rep. 185; McKenzie v.Standard Bleachery Co., 109 N.J. Eq. 429; 157 Atl. Rep. 845); and hence their application must be denied and their petition must be dismissed.
In support of their objection to the approval of the plan for settlement here submitted by the Commissioner, the Receivers contend, among other things, that the holders of guaranteed bonds and mortgages or interests therein, have or possess no right or claim in or to any part of the statutory deposit estate in the hands of the Commissioner; and hence that the part of the proposed plan which provides for payment being made to them, in effect, contemplates an appropriation of the statutory deposit estate to persons other than *Page 527 
policyholders who alone, the Receivers now claim, are entitled to first share therein to the full extent of their respective claims. This issue, however, no longer appears to be open to controversy or debate, having been already settled and determined adversely to the Receivers' present contention by the hereinabove mentioned order of November 10th, 1938. That order is concededly still in full force and effect, no appeal nor any other action seeking its reversal or modification having ever been taken by any of the parties in interest; and hence its verity, validity and conclusiveness cannot here be thus collaterally attacked or impeached. Diehl v. Page, 3 N.J. Eq. 143; Plume v. HowardSavings Institution, 46 N.J. Law 211; Podesta v. Binns, 69 N.J. Eq. 387; 60 Atl. Rep. 815; Crawford v. Lees, 84 N.J. Eq. 324;93 Atl. Rep. 201; West New York Improvement Co. v. West NewYork, 88 N.J. Eq. 571; 104 Atl. Rep. 611; In re Leupp, 108 N.J. Eq. 49; 153 Atl. Rep. 842; Hedden v. Hedden, 10 N.J. Mis. R.1047; 162 Atl. Rep. 114; Ordinary of New Jersey v. Webb,112 N.J. Law 395; 170 Atl. Rep. 672.
Nor can I subscribe to the Receivers' contention that the plan here submitted contemplates a transfer of all the assets constituting the statutory deposit estate from the hands of the Commissioner to those of another trustee for administration. On the contrary, the plan unquestionably is conceived and designed to provide a simple, expeditious and inexpensive method by which the Commissioner, in accordance with their offer to him, will be able to consummate the tentative settlement with all parties whose claims in and to the said statutory deposit estate had, by the hereinbefore mentioned order of March 20th, 1939, already been fixed and established; and this by his merely transferring the assets, in specie, of the said statutory deposit estate to the Hackensack Trust Company, which institution they had selected and designated for the purpose of receiving and holding these assets in trust for them, instead of taking and holding them in their joint names; and simultaneously with the making of which transfer releases from each and all of the parties in interest are, in accordance with the terms of said proposed settlement, to be delivered to the Commissioner releasing him and the Title *Page 528 
Company from any and all claims which they might have against him or it.
The Receivers also insist that the plan is unjust and inequitable in that it provides for the transfer to the holders of guaranteed bonds and mortgages or interests therein assets the value of which apparently exceeds the aggregate amount of their established claims. While it is true that the aggregate value of those assets of the statutory deposit estate, the transfer of which is contemplated under the submitted plan, as appraised by the Commissioner and his experts, exceeds the total amount of all the claims of the guarantee holders as determined by the master, nevertheless sight must not be lost of the fact that property depreciation, obsolence, repairs and vacancies, as well as accrual of taxes and interest and the lack of capital to make needed improvements to expedite the sale of the properties, are all vital factors which make the continued administration of this statutory trust estate and the management of its constituent properties hazardous and apt to visit future losses not only upon the holders of said guarantees but also upon the general creditors and stockholders of the Title Company, since losses would, in the event of the statutory deposit estate being inadequate to fully satisfy the already established claims of the said guarantee holders, ultimately result in proportionate claims for such deficiency being made against the general corporate trust estate by the said guarantee holders along with the general creditors of the Title Company. However, in order that the Receivers, all the other creditors and the stockholders of the Title Company as well as all other parties in interest be afforded a full opportunity to be heard at length and to adduce proof with respect to the fairness of the appraised values of the said properties as fixed by the Commissioner, as well as with respect to the fairness of that part of the plan which contemplates their transfer to the said guarantee holders in full settlement and payment of their said claims, a reference will be made to a special master of this court for the purpose of hearing testimony, ascertaining and reporting with respect thereto.
An order will be signed in accordance with the foregoing views. *Page 529