WILLIAM ROSENSTEIN

*v.*

HORACE B. BURR.

[Decided June 14th, 1912.]

A defendant in a suit for specific performance of a contract for the sale of land, who has previously brought an unsuccessful suit to cancel the contract on the ground that it was invalid for fraud, and because executed on Sunday, is estopped by the decree holding the contract valid from defending the suit for specific performance on the ground that the contract was invalid on other grounds than those specified in the first suit.

---

*Mr. Thomas P. Fay,* for the complainant.

*Mr. William M. Seufert* and *Mr. Charles W. S. Parker,* for the defendant.

HOWELL, V. C.

On July 22d, 1907, the defendant, Burr, was the owner of a tract of land at Oceanport which the complainant desired to purchase. The complainant sent Nivison, his agent, to Burr, the defendant, to negotiate for the purchase. Nivison gave Burr a check for $200 and took from him an agreement of which the following is a copy:

"Received from Mr. William Rosenstein a check for $200.00 on purchase price of my farm at Oceanport and a check is to be forwarded to me on Tuesday for 300, or more, making in all Five hundred dollars, balance of 3000 to be paid on or before October the 1st, 1907. 3000 to remain on bond and Mortgage with privilege to pay off at any time at 5 per cent. and I to pay the taxes and insurance, purchase price six thousand and five hundred dollars, everything on the place to go in purchase price. Except furniture all tools horse, cow, chickens, wagons and farming utensils if said William Rosenstein fails to pay the Three thousand in on or before October the first 1907 he forfeit said five hundred he paid and gives up possession.

"Money possession to be given July 25, 1907.

"H. B. BURR.

"Witnessed by Henry L. Nivison.
"Dated July 22, 1907."

This is claimed by the complainant to be a contract for the sale of lands, and he files his bill against the defendant for the specific performance thereof.

On September 18th, 1907, before the time for the performance of the contract had arrived, Burr filed a bill in this court which prayed for the cancellation of the said instrument on the ground, *first,* that it had been obtained from him by fraud, and *second,* that it was executed in Connecticut on Sunday and that it was void because violative of the Connecticut Sunday laws. An issue was made which was heard before this court in 1908. It was held that no fraud was shown and that there was no evidence of violation of the Connecticut Sunday law, and the bill was therefore dismissed. *Burr* v. *Nivison, 74 N. J. Eq. (4 Buch.) 320.* An appeal was taken from this decree, which was heard and decided in 1909. The decree dismissing the bill was affirmed. *Burr* v. *Nivison, 75 N. J. Eq. (5 Buch.) 241.* This court held that Nivison was the agent of Burr in the transaction. The appellate court held that Nivison was the agent of Rosenstein. The record of the first suit was made evidence in this suit by the stipulation of counsel, and it will, therefore, be assumed throughout that Nivison was the agent of Rosenstein.

The bill in the specific performance case alleges the so-called agreement and a tender of the purchase price, and prays that the defendant may be required to convey the premises in pursuance of the terms of the agreement. Two defences are interposed: one is that the agreement relied upon is invalid for the reason

that its terms were rejected by Burr before they were or could have been accepted by Rosenstein;. the other is that there was a stipulation that the agreement should not be binding on Burr until it should have been made the subject-matter of a formal document to be drawn by a scrivener and formally executed. Neither of these defences appears in the answer; they were developed at the hearing. The answer confines itself to a denial of the due execution of the so-called agreement and of the tenders alleged by the bill.

The defences now interposed appear to be an after-thought devised for the purpose of evading the prayer of the bill. When the first suit was brought to set aside the so-called agreement the facts on which these defences are based existed and could have been used by Burr as affirmative weapons of attack. In addition to his allegations of fraud and violation of law he might have added the matters on which he now relies; they are entirely consistent with the causes that he did allege and they tended toward the result for which he then prayed. It is the duty of one who brings a suit to include in it every cause of action which is consistent with the general purpose of his bill, to put all his grounds of action in one complaint. In *Fourniquet* v. *Perkins, 7 How. 160,* it was held that a judgment in a district court being generally for the defendant must be supposed to cover the whole case and not to have rested upon only a branch of it, viz., a release which was pleaded by the defendant; and that where a bill was filed in the circuit court by the same petitioners against the same defendant it was correct for that court to consider the question as *res adjudicata.* And in *Northern Pacific Railroad Co.* v. *Slaght. 205 U. S. 122,* the court said: "Although there may be very different claims for the same thing there can be only one right of property in it; therefore, when a cause of action has resulted in favor of the defendant and plaintiff claims the property in a certain thing, there can be no other action maintained against the same party for the same property, for that would be to renew the question already decided; for the single question in litigation was whether the property belonged to the plaintiff or not; and it is of no importance that the plaintiff failed to set up all his

rights upon which his cause of action could have been maintained; it is sufficient that it might have been litigated." To the same effect is *United States* v. *Cal. & O. Land Co., 192 U. S. 355.* There a decree was rendered upon a bill in equity brought under an act of congress to have patents for land declared void and forfeited, and to establish the title of the United States to the land. This was held to be a bar to a subsequent bill brought against the same defendants to recover the same land, on the ground that it was excepted from the original grant as an Indian reservation. Speaking of the two suits, the court said: "The best that can be said, apart from the act just quoted, to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means—that is to say, by evidence that the lands originally were excepted from the grant. But in this as in the former suit, it seeks to establish its own title to the fee." See, also, *Beloit* v. *Morgan, 7 Wall. 619.* The decision of the case, therefore, appears to rest upon the principles which control the action of the court in relation to *res adjudicata.* It was held by the supreme court of the United States in the leading case of *Cromwell* v. *Sac County, 94 U. S. 351,* that a judgment was a finality as to the claim or demand in controversy, concluding parties and those in privity with them not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose; and it cites the case of a judgment rendered upon a promissory note which is conclusive as to the validity of the instrument and the amount due upon it, although it might be subsequently alleged that perfect defences actually existed of which no proof was offered, such as forgery, want of consideration or payment; but it was held in the same case that there was a difference between the effect of the former judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the first case, the judgment is an absolute bar; in the second

case, it operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered.

This case has been followed in this state (*Paterson* v. *Baker, 51 N. J. Eq. (6 Dick.) 49; Clark Thread Co.* v. *William Clark Co., 55 N. J. Eq. (10 Dick.) 658; Mercer County Traction Co.* v. *United New Jersey Railroad and Canal Co., 64 N. J. Eq. (19 Dick.) 588*) and may be considered as settled law in this court. The converse of the proposition to be worked out in this case was decided in *New York Life Insurance Co.* v. *Bangs, 13 Otto 780.* There an action at law was brought against the life insurance company on policies of life insurance in which the plaintiff recovered. Subsequently the company brought suit in equity to set aside the policies on the ground of fraud to which the former recovery was pleaded as a defence. The court said: "The judgment in the action at law was a bar to this suit. Its recovery concluded all matters which might have been urged as a defence to the policies; a fraudulent purpose in procuring them subsequently carried into execution would have been a good defence. It was in fact originally pleaded and afterwards withdrawn; its withdrawal did not authorize a suit in another form for its establishment against the demand of the plaintiff. When an action at law is brought upon a contract, the defendant denying its obligation either from payment or release or any other matter affecting its original validity or subsequent discharge, must present his defence for consideration. A recovery is an answer to all future assertions of the invalidity of the contract by reason of any admissible matter which might have been offered to defeat the action." These principles apply directly to the case in hand. In the former suit the issue was whether the so-called contract was valid. Two grounds of invalidity were asserted; two further grounds of invalidity existed but were not alleged and are now made the basis of a second attack upon the validity of the contract. It is quite manifest that the question now raised was raised and decided adversely to the present defendant in the former suit, and he therefore cannot have the question relitigated in this proceeding. He is bound by the decree in the former suit.

Besides, the parties ought not to be given the opportunity to, split up their causes of action or their defences and attempt to, hold them in reserve for purposes of attack or defence in future litigation, for the reason that it is to the interest of the state that there should be an end to litigation.

Upon these considerations I am compelled to reach the conclusion that the defendant has had his day in court and must make a conveyance in accordance with the terms of his contract.

I will advise a decree in accordance with these views.