## GEORGE W. SARSON

*v.*

## CARMELIA MACCIA.

[Decided June 3d, 1919.]

1. Where the record of a case exhibits the identity of the parties, the cause of action and the subject-matter, the essential elements of a plea of *res adjudicata* are exhibited; the forum, the form of the remedy and the nature of the relief are immaterial.

2. If after a decree in equity a party shall proceed at law for the same matter, equity will restrain him by injunction; such suit at law is treated as a contempt of court.

3. Where a court of equity has jurisdiction over a transaction on account of alleged fraud, it does not lose jurisdiction because of the equities of an innocent purchaser; it may refuse to exercise its jurisdiction against such higher equities.

On bill, &c.

*Mr. Joseph M. Roseberry,* for the complainant.

*Mr. Charles C. Giffoniello,* for the defendant.

BACKES, V. C.

The complainant seeks to restrain the defendant from prosecuting her action in the supreme court to recover damages for an alleged deceit, on the ground that the cause of action has been determined by this court on its merits, adversely to the defendant, and is *res adjudicata.*

The defendant sold to the complainant her property in Newark, and took in payment $1,100 in cash, a promissory note of one Park for $800, and a certain mortgage of $1,500. The mortgage was a second mortgage and was barred and wiped out by a foreclosure sale under the first mortgage shortly after the deal was consummated. The defendant in her suit at law alleges

that the mortgage was worthless, and that the complainant, knowing it to be so, with intent to cheat and defraud her, falsely represented it to be "a gilt-edged security" for $1,500, and that by reason of such false representation she was induced to part with her property.

In a former suit in this court for a rescission of the contract and restoration of her property, the defendant by her bill alleged, after stating events leading up to it, that the complainant represented to her that the second mortgage was second only to a first mortgage of $5,000 held by a building and loan association, and the installments and interest thereon were paid up to date; that the promissory note was good and the maker was the owner of several pieces of real estate in Essex and Union counties and was financially able to pay it; that in truth the installments and interest on the first mortgage were then greatly in arrears, and the mortgage was under foreclosure; that the maker of the note was an absconder and heavily indebted; that the note and second mortgage were worthless; and that the complainant, well knowing that the representations made by him were false and fraudulent, did, by his deceit, connivance and fraud, induce the defendant to part with her property without his paying her a fair, *bona fide* and valid consideration. Issue was taken on the charges of fraudulent representations, and the cause came before Vice-Chancellor Stevens for trial. He dismissed the bill after a hearing, reciting in the decree of dismissal that no misrepresentations had been made, nor fraud practiced upon the defendant by the complainant. While the bill did not specifically set up the cause of action now alleged in the suit at law, viz., that the complainant, with intent to cheat and defraud the defendant, falsely represented the second mortgage to be a gilt-edged security for $1,500, it is clear that it was one of the issues tried, and was treated by the vice-chancellor as raised by the pleadings, and that the decree of dismissal turned upon its decision. Counsel has furnished a transcript of only a portion of the testimony, and the vice-chancellor's oral conclusions; but from the little before me, and the opinion, it is plainly to be seen that the transaction, in all its details, was laid before the court; that the question of fraudulent representation was upper-

most, and that the case was decided upon its merits. In the opinion, after reciting the history of the negotiations for the properties, the vice-chancellor said: "The charge of the bill is that the $1,500 mortgage and the Park note were worthless, to the knowledge of Mr. Sarson, and that he fraudulently transferred what he knew to be worthless securities, representing that they were good. That is the allegation of the bill, and the whole case, as I understand it, turns upon the proof of that allegation." After a discussion of the testimony bearing upon this point he continued: "As I said before, the whole case turns upon the question whether or not Mr. Sarson, at the time when he handed over these securities, represented, either by word of mouth, or otherwise, they were good, when he knew them to be worthless. There is no evidence at all that at the time when he turned them over he knew them to be worthless. On the contrary, the evidence seems to be that he supposed them to be good. I cannot believe that any man in his senses would knowingly buy at their face value securities when he knew them to be bad. So, it seems to me, that the very foundation of the case fails on this vital question." And, in conclusion, he said: "The suit must fail for three reasons—*first*, for the reason that there is no proof that at the time when Mr. Sarson handed over these two securities he knew they were worthless; *second*, for the reason that Mr. Benker is not shown to have been other than a *bona fide* purchaser for value without notice, and *third*, for the reason that whatever action the parties might have maintained in February or March they lost by not beginning proceedings until the following August." The first of these reasons necessarily implies the decision, in the light of what had already been said, that Mr. Sarson did not misrepresent the second mortgage, for, had misrepresentation been established, his knowledge of its untruth would have been immaterial in equity. Equity grants relief if the representation be false, in fact, even though not consciously made to defraud. *DuBois* v. *Nugent, 69 N. J. Eq. 145.* To sustain an action at law for deceit, the representation must be shown to have been not only false, in fact, but known to be false and made with fraudulent intent. *Cowley* v. *Smyth, 46 N. J. Law 380.* The second disposed of the charge that Benker, to

whom Sarson had conveyed the property acquired from the defendant, took with notice of the alleged fraud, adversely to the defendant. And the third held the defendant to be in laches.

The record of the case exhibits beyond question all the essential elements of a plea of *res adjudicata*—the identity of the parties, the cause of action, and the subject-matter. The only difference between the suit in equity, decided, and the action at law, pending, is the forum, the form of the remedy and the nature of the relief. In the former, had the defendant been successful, the recovery would have been *in specie;* in the latter the award would be damages *pro tanto* of the property lost. This difference does not prevent the decree from operating in estoppel. *23 Cyc. 1116, 1169.* Nor, in order to raise the estoppel, is it necessary that the pleadings in the first suit should have counted upon the precise false representations set up as the cause for action in the second. It is enough if the matter was triable in the first suit, and that it was actually litigated and adjudicated. Here the same misrepresentation forms the basis of each suit, and the primary inquiry, vital to a recovery in either, is, Was the mortgage misrepresented? A test of the identification of the cause of action is, Would the evidence, adequate to a recovery in the second suit, have been sufficient to support the first? *23 Cyc. 1158.* In the equity suit the thing controverted was whether the complainant misrepresented the nature and character of the security of the second mortgage, however the misrepresentation may have been phrased; and the determination of that question by the court must be regarded as a finality. The defendant threw her lot with the court of chancery, and after an exhaustive investigation, and upon principles more favorable to her than the law courts could afford, the cause, which she again desires to litigate, was determined against her; and by that determination she is bound. *Marsh* v. *Masterton, 101 N. Y. 401,* contains many examples of the rule of former recoveries, but we need not go beyond our own books for illustrations of the application of the doctrine. In *City of Paterson* v. *Baker, 51 N. J. Eq. 49,* this court decreed the surrender of two city bonds, to be canceled, based upon the conclusiveness of a judgment in an action at law, brought by Baker, to recover

on the interest coupons of the bonds. The suit had been determined against him on the ground that he was not the *bona fide* owner of the bonds. Vice-Chancellor Van Fleet, as usual, illuminated his learned discussion of the rule of *res adjudicata* by the citation of eminent authorities. A reference to a principle in one of the cases cited, that of *Cromwell* v. *County of Sac, 94 U. S. 351,* will serve to demonstrate the applicability of the rule to the present case. After stating that where the second suit is based upon the same claim or demand involved in the first, judgment in the first must be treated as an absolute bar, Mr. Justice Field said: "But where the second action is upon a different claim or demand, but between the same parties, the judgment in the prior operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined, for it is only upon such matters as were actually litigated and determined that the judgment is conclusive." And by way of further illustration may be added the language of Chief-Justice Shaw in *Sawyer* v. *Woodbury, 7 Gray 499* (at *p. 502*): "It is not necessary that the action in which it (the judgment) is found, and that in which it is relied on as an estoppel, should be of the same kind, or for the same cause of action. If a question upon the execution or validity of a deed in fee be put in issue in an action of trespass, and expressly found by the jury, such verdict and judgment upon it may be relied on as a conclusive evidence of such fact, on the trial of a real action or writ of right, between the same parties, for the same estate. It has become a fixed fact between these parties for all purposes." These cases hold the judgment to be an estoppel though the suits involve different claims; *a fortiori,* is a judgment a bar to a second suit involving the same cause of action, only seeking different relief. See *In re Walsh's Estate, 80 N. J. Eq. 568.*

Counsel for the defendant questions the jurisdiction of this court to restrain the suit for deceit, contending that the com-

plainant has a complete and adequate defence at law. *Res adjudicata* by a decree in equity is, doubtless, pleadable in the action at law, but the party holding the decree is not driven to that defence. It is the settled law of this state (and I quote from the opinion of this court in *Putman* v. *Clark, 34 N. J. Eq. 532,* affirmed by the court of errors and appeals) that: "If, after a decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction. Such suit at law is treated as contempt of court, for it is gross oppression to vex another with a double suit for the same cause of action." *Lead. Cas. Eq. 1319 (635)*; *Story Eq. Jur. 889*; *Joyce Inj. 1040*; *Simpson* v. *Hart, 1 Johns. Ch. 91 (a)*; *Washington Packet Co.* v. *Sickles, 24 How. 333; 5 Wall. 580.*

Another point was suggested—just that—which ought not to be passed without comment. The proposition advanced is, that the decree is not a bar to the action at law because the court of chancery was without jurisdiction to grant the relief prayed for, even had it found that fraud had been perpetrated, because of the equities of an innocent purchaser. At the time the defendant filed her bill to rescind the contract the complainant had parted with the land to Benker, a *bona fide* purchaser. This fact was set up in the bill and the good faith of the purchaser was challenged. The vice-chancellor, after deciding that there was no fraud, and denying relief on that score, held further that Benker was an innocent purchaser, and for that reason, also, relief must be denied. The fallacy of the point lies in the failure to distinguish between jurisdiction and the exercise of jurisdiction. The court, unquestionably, had jurisdiction, for it could and would have granted the relief prayed for had the charge of fraud, and notice thereof in Benker, been made out. If the fraud had been established and notice had not, the court would have refrained, not for lack of jurisdiction, but because it would not exercise its jurisdiction as against the higher equities of an innocent purchaser. Here the two issues, indispensable to a recovery, were tried and determined; and both or either is *res adjudicata* and pleadable as the exigency may demand.

The complainant is entitled to a perpetual injunction.