## LAURSEN v LOWE et

Ohio Appeals, 9th Dist, Summit Co

No 2415.   Decided Feb 21, 1935

Brouse, Englebeck, McDowell, May &
Bierce, Akron, for plaintiff.

Willis Bacon, Akron, and Victor M. Stolts,
Eau Claire, Wis., for defendants.

**OPINION**

By WASHBURN, J.

For the purpose of brevity the suit in the
United States court will be referred to as
the federal suit, and the suit in the Common Pleas Court will be referred to as the
state suit.

If the evidence justifies the conclusion
that in the two suits, federal and state,
one and the same cause of action is set
forth, or that all of the matters alleged in
the state suit were matters in issue or
points controverted in the federal suit and
were actually and necessarily litigated and
determined therein, and that said state
suit was not brought in good faith but for
the sole and only purpose of annoying, vexing and harassing Laursen and injuring
and damaging him in his business and
reputation, and that Lowe is financially ir-

responsible—if the evidence in this case warrants the finding of the foregoing facts, then a case is made warranting a court of equity in enjoining useless and vexatious litigation, and especially is that so if the evidence establishes beyond question all of the elements of a plea of res adjudicata.

It is true that plaintiff's claim includes all the essential elements of res adjudicata and that the same constitutes a defense to the state suit, but confining plaintiff to such defense ignores entirely his claim that it is a vexatious suit not brought in good faith, and does not afford him protection against the threat of subsequent suits on matters already litigated; under such circumstances, if plaintiff's claims are established beyond question, a court of equity may well hold that a plea of res adjudicata will not afford plaintiff an adequate and complete remedy. The obvious design of a remedy in equity for such a situation is "to procure repose from perpetual litigation."

"If suits might be perpetually brought to litigate the same questions between the same parties or their privies as often as either should choose, it is obvious that remedial justice would soon become a mere mockery; for the termination of one suit would only become the signal for the institution of a new one, and the expenses might become ruinous to all the parties. The obvious ground of the jurisdiction of courts of equity in cases of this sort is to suppress useless litigation and to prevent multiplicity of suits."

2 Story's Equity Jurisprudence (14th ed.), §1173.

See also. Ibid., §1179; Sarson v Maccia, 108 Atl. 109; Moore v Harkins, 101 SE 564; and 14 R.C.L., "Injunctions," §55, p. 353.

The important question, then, is whether the evidence is such that it clearly appears that all of the questions of law and fact involved in the state suit were litigated and determined against the contentions of Lowe in the federal suit.

Before examining in detail the issues presented in the two suits, it may be well to state in a general way the nature of the federal suit.

Laursen, in March, 1923, invented valuable improvements in the process of manufacturing rubber tubes and tires and the machines used in such processes, and desired to sell the use of such improvements to rubber companies on a royalty basis. Laursen was in poor circumstances financially, and had succeeded in licensing only one small rubber company, which company was beng operated by a receiver.

Lowe, who had been an employee of a rural bank, was a promoter and was heavily in debt and execution-proof. On or about the first day of April, 1924, Laursen and Lowe entered into some sort of an oral agreement, by which Lowe should assist Laursen in procuring royalty agreements with rubber manufacturers and receive pay therefor.

In the federal suit, Lowe alleged that said agreement constituted a joint adventure, which was that, "in the event rubber companies were induced to adopt and to make use of the inventions of the said L. A. Laursen, in the manufacture of tubes and tires or the manufacture of tubes and tires upon a royalty basis as proposed, to-wit, two and one-half cents per tube and seven cents per tire, then and in that event, this plaintiff was to receive as his share for promoting the project and inducing said rubber companies to adopt and to use said invention of the defendant, L. A. Laursen, one-half cent per tube for all tubes made by said rubber companies by the use or practice of the inventions, made and to be made, of the said L. A. Laursen, and two cents per tire for all tires so made."

Referring to the same agreement in the state suit, Lowe alleges that—

"On or about the 1st day of April, 1924, plaintiff and defendant entered into an oral contract which provided that plaintiff was to employ such help as needed for such purposes; that plaintiff in conjunction with said defendant, was to induce rubber companies in the United States and manufacturers of tubes and tires to adopt the processes and inventions and apparatus constituting the inventions of the said L. A. Laursen and the improvements thereon, and to induce them to contract to use the same upon a royalty compensation to said L. A. Laursen of 2½ cents per tube and 7 cents per tire. Plaintiff avers that he was so employed by defendant to sell and to aid in the sale of said processes and the improvements thereon. Plaintiff avers furthes that * * * said L. A. Laursen agreed to pay plaintiff for his services one-half cent per tube and two cents per tire for all such tubes and tires made by manufacturers so using the defendant's processes."

After alleging in both the federal suit and the state suit that he proceeded to carry out and fulfill his part of said agreement and that it developed that manufac-

turers would not pay royalties as large as was anticipated, Lowe alleged, in the federal suit, that—

"The defendant, L. A. Laursen, and plaintiff then modified their original agreement only as to the contingent share, which was to be received by the plaintiff on their joint adventure in that plaintiff was to receive for his services and expenditures, in the promotion of the sale of licenses to the rubber companies, one-fifth, or twenty per cent, of the amount so received from the rubber companies by the said L. A. Laursen as royalties, instead of one-half cent per tube as before stipulated."

Referring to said claimed modification, Lowe, in the state suit, alleges that—
"By mutual agreement between plaintiff and defendant, said contract was modified in the respect only that the said defendant was to pay plaintiff for such services of selling and aiding in the sale of the use of defendant's processes what said services were reasonably worth."

In both the federal suit and the state suit, Lowe alleged that he fully performed, and in the federal suit that he had been paid only "the sum of $800," and in the state suit that he had been paid "on account of the above services rendered, $500."

In the federal suit, Lowe prayed the court to declare him to be the owner of one-fifth of the royalty contracts and that an account be taken of the amount due him from Laursen and that a judgment be rendered therefor.

In the state suit Lowe alleges that there is due him, "as reasonable compensation for his services under said agreement and modified agreement, 20% of the benefits already received by the defendant, of $160,-000, and for probable future earnings," and he prays for a judgment for $399,500.

It thus appears that in the federal suit Lowe sought one-fifth of the royalties received and to be received by Laursen, and in the state suit he seeks substantially the same result. In the federal suit the agreement is denominated a joint adventure, and in the state suit the same agreement is treated as a simple contract for pay for services rendered. In both a recovery is sought because Laursen failed to perform a contract claimed to have been entered into by him on or about April 1, 1924, and modified on or about the first day of October, 1924, and the only possible difference we can discover in the two suits is that it

was alleged in the federal suit that by the modification Laursen agreed to pay to Lowe one-fifth of the royalties received, and in the state suit that he agreed to pay what Lowe's services were reasonably worth, but in both suits the basis of recovery is the same express agreement.

Did the court in the federal suit determine that there was no agreement at all?

On that question we have not only access to the evidence and the pleadings in the federal suit, but we have a right also to all the light we may obtain from a study of the opinion rendered by the United States Circuit Court of Appeals, which opinion was certified by that court as a part of its mandate to the District Court for the guidance of the latter court, and which opinion, when considered in connection with the pleadings and evidence, we consider as conclusive on the question of what the Court of Appeals determined in reference to there being any agreement, express or implied, to pay Lowe for his services, except agreements subsequent to said claimed modification, which were on a salary or per diem basis and which were fully performed by Laursen.

Before referring to the opinion in the federal case, it is proper to ascertain from the answer of Laursen, in response to the pleading of Lowe, what he alleged the arrangement between them was. He denied that the original arrangement was that if contracts were made with manufacturers to pay as royalties 2½c per tube and 7c per tire he would pay Lowe any sum whatever, and he alleged that his offer was that if contracts for royalties in excess of said rates were made, Lowe might have such excess.

He admitted that by August 1, 1924, it was apparent (because manufacturers would not agree to pay royalties even as high as 2½c for tubes and 7c for tires), that his offer to pay Lowe what was received above said rates, was impracticable, and he alleged that such arrangement as existed was terminated with the consent of Lowe, and that there was no modification of said arrangement, but that he (Laursen) stated to Lowe that "for any further services rendered" by Lowe to him, Lowe "would be compensated in an amount to be determined by" Laursen "in his own discretion"; and he further alleged that all subsequent services rendered by Lowe for Larsen were "under contracts of employment" between them and that Lowe had been paid in full "the compensation or salary provided for under said contracts."

It is thus apparent that the issue was squarely made as to whether said first arrangement between Laursen and Lowe was terminated by mutual consent and no agreement as to pay for services was substituted therefor, or was so modified as to continue in force some agreement for pay for services.

The basis of Lowe's right to recover was an agreement for compensation for his services after both parties had found that the original arrangement was impractical. Lowe claimed that there was such an agreement and that the compensation agreed upon was one-fifth of the royalties, and Laursen claimed that there was no agreement at all, that it was optional with him whether he would pay anything, that that arrangement was acquiesced in, and that it was later carried out by the parties agreeing that Lowe should be paid a salary and his expenses, which was done.

The important issue was not how much Lowe was to be paid—whether a definite amount or what his services were reasonably worth—but whether there was any arrangement at all, or whether, on the contrary, there was an understanding that there would not be any arrangement for compensation for Lowe unless Laursen consented thereto.

After considering the evidence in the federal suit, the United States Court of Appeals found that the rights of the parties did not depend upon whether the relationship of the parties "was that of joint adventurers or merely of parties to a unilateral contract," and considered the case as if the question were also presented "as one of simple breach of contract."

The opinion of the court further shows that "All parties agree that an offer of some sort was made by Laursen * * * although they disagree as to whether such offer was for a unilateral contract" and "as to whether it ever ripened into a bilateral contract of joint adventure," and then stated that it was "unnecessary to decide definitely the terms of this initial contract, or offer," for "it is obvious from a reading of the record that no obligation upon Laursen's part to compensate Lowe ever arose under such initial proposal."

As to the claim that Lowe's right to compensation arose by reason of a modification of the original arrangement in October, 1924, the court, in its opinion, observes that—

"It is Laursen's contention that in the fall of 1924 he stated to Lowe that the con-

tract had failed of possibility of performance and that it was therefore terminated or cancelled, that he would compensate Lowe for services which it might develop he had rendered in the past, or for services which he might thereafter render, but that he, Laursen, must be the sole judge of the rate of such compensation."

Quoting further from the opinion:
"There is no doubt upon the evidence, that the securing of royalties of at least 2½ cents per tube was an express condition precedent to the payment of any compensation whatever. Lowe had gambled upon his ability to perform, and had lost. Under these circumstances the making of just such a proposal as Laursen testifies was made seems to us the more probable course. Total loss of all compensation whatever was replaced by possibility of bounty for past services and by the definite assurance of compensation for future services."

The observation just referred to as to future services has reference to the claim of Laursen that if Lowe was to receive anything for future services, he was to "receiv the compensation or salary provided for" by subsequent agreement of the parties; and referring to such subsequent agreement the court observed that—

"As we have said, the evidence all tends to show that such future services were to be paid for when rendered, probably on a per diem basis with allowance of expenses, and such an arrangement is inconsistent with finding in them the consideration for the new promise now asserted."

As further showing that the court determined that in the fall of 1924 there was no modification of the initial proposal of Laursen, in which modification Laursen agreed to pay Lowe compensation for his services, we quote from the opinion of the court as follows:

"Even more obvious than this want of consideration for the so-called modification, seems to us to be the natural inconsistencies of several letters written by Lowe and of the action of the parties between the alleged date of modification, held by the District Judge to have been in September, 1924, and the time when Lowe first made claim to an interest in the royalties, in November, 1926, more than two years later. The first of these inconsistencies in point of time arose under date of September 13,

1924. Having been garnisheed in a suit against Lowe, Laursen wrote to Lowe under date of September 12, 1924, saying that he failed to see where he owed Lowe anything and that he could not understand how the impression had got around that he did. This was not the type of a letter written by one under a definite contract agreement which promised high return, although such return had not yet begun to materialize. To this letter Lowe replied the following day, saying: 'I assure you that I have in no way at any time given the impression that you were indebted to me. I therefore do not understand why you should be made a defendant in an action of this kind because you have more than paid me for any services I have rendered; in fact, I owe you $22 to date and which I have not accounted for.' * * *

"In addition to this, there was another garnishment in January, 1925, when Lowe's attorney himself prepared Laursen's answer to the effect that Laursen owed Lowe only $35 for services rendered. At that time there was no suggestion that more was in fact due.

"Lowe became Laursen's secretary as of March 15, 1925. At that time Laursen paid Lowe $500, as Laursen says in full compensation for all services rendered to date. Lowe says that this was simply a payment on account; but here again the action of the parties seems consistent only with the testimony of Laursen. * * *

"In Lowe's income tax return for the year 1925 this $500 payment was also returned by him as salary. From this time, also, there seems to have existed a situation which is surprisingly inconsistent with the contentions of Lowe."

The court further observed that Lowe continued to act as secretary until May, 1926, when his salary ceased and his compensation was placed upon a basis of expenses and $35 per diem.

The court further referred to a statement made in a letter written by Lowe in 1926, in which, referring to his arrangement with Laursen in reference to royalties, he said: "Furthermore, the promise and agreement made with us was later abrogated."

In both the federal suit and the state suit, reference is made to a transaction concerning a Duesenberg automobile which Lowe claimed he purchased for Laursen, and that same item is referred to and recovery sought in the suit brought by Lowe in Wisconsin at the same time that said federal suit was begun, and as to that transaction the opinion of the federal court contains the following observation, which is referred to herein as having a bearing upon the question of the good faith of Lowe in bringing this action. The court observed:

"Another element of Lowe's claim arises out of the so-called Duesenberg automobile transaction. While the initial contract or offer was in existence and Lowe bound to defray expenses, it was apparently understood that Laursen should have a more presentable automobile with which to meet rubber company officials when they visited Eau Claire. The Duesenberg Motor Car Company was in the hands of a receiver, and O'Brien and Lowe undertook to secure a Duesenberg car for Laursen. Laursen was not fully taken into their confidence as to ways and means. He turned over his old Cadillac and approximately two thousand dollars in cash, and by what was at least an exceedingly questionable transaction of the purchase of some cut-over timberland for $640 and a fictitious mortgage of it to a 'dummy' for $3200, O'Brien and Lowe were able to secure the Duesenberg car, paying $2094.50 in cash and securing the balance with the $3200 mortgage. So far as appears from the evidence none of this balance has ever been paid. Thus there was expended in this purchase practically the same amount as that secured from Laursen, in cash, and the purchasers were out only the $640 paid for the land. In lieu of this sum they had the Cadillac automobile, worth, it is said, at least $671."

From a consideration of the record in this case, we are clearly of the opinion that the federal suit, under the pleadings and as tried, involved the question of whether, at the time the initial contract was terminated, there was an agreement, either express or implied, that Laursen should pay Lowe for his services, except in the event that Laursen subsequently agreed so to do, and we are further of the opinion that in the federal suit the United States Court of Appeals determined that said initial agreement was not so modified as to continue in force any agreement, express or implied, to pay Lowe for his services, and that such agreements as were thereafter made in reference to Lowe's payment for services were fully performed by Laursen; and we think that these conclusions are so fully and completely established that reasonable minds cannot consider the record and reasonably determine otherwise.

In that view of the record, no question of a "mistake of remedy" is presented.

Having reached the conclusion that all of the questions of law and fact involved in the state suit were litigated and determined against the contentions of Lowe in said federal suit, and that said state suit was not begun in good faith and that it is a vexatious suit brought by a plaintiff who is not financially responsible and who has failed to pay the costs, amounting to thousands of dollars, assessed against him in the federal suit, and that the object and purpose of the plaintiff in bringing the suit was not to litigate any question that has not been fully litigated and adjudicated between the parties, but is brought in pursuance of threats for the purpose of annoying and worrying Laursen, and being of the opinion that a plea of res adjudicata will not afford Laursen an adequate and complete remedy, we hold that a court of equity is justified in affording relief to the plaintiff by enjoining the defendant Lowe from prosecuting said state suit, and from bringing any other suit to relitigate the matters determined in the federal suit, and a decree to that effect may be entered for the plaintiff.

Finding no cause for the issuance of an injunction against the defendant Bacon, the petition as to him is dismissed.

Judgment for all costs against defendant Lowe.

FUNK, PJ, and STEVENS, J, concur in judgment.