There are two suits before the court involving the same parties. Both were filed before process was served in either and the two have been heard together.
In one, Henry Y. Hooper and Robert E. Byrne, trading as the Hooper Byrne Company, sue the Laytham corporation, which operates a foundry, praying for an accounting and payment of commissions at the rate of five per cent. on all business done by the foundry with certain named customers which they introduced to the foundry corporation. The suit is limited to business done since 1936. It is based upon an alleged contract as set forth in the document executed by the parties in November of 1932. The other suit, brought by the foundry corporation, alleges in substance that Hooper and Byrne threaten to bring suit, as they have in fact done, alleging a liability for commissions; that the document referred to does not set forth the actual contract between the parties and that there was fraud in the execution of the document. The bill further sets forth that Hooper and Byrne have violated the terms of the actual agreement entered into between the parties. The bill prays that the document be rescinded or that it be reformed, so as to set forth the true agreement, and that it be declared that Hooper and Byrne have no rights therein. The same allegations are set up as a defense to the suit brought by Hooper and Byrne.
There has been prior litigation between the same parties based on their rights under the document referred to which resulted in a judgment for Hooper and Byrne for commissions at the rate of five per cent. on business done with certain named customers up to 1936. These named customers are the same ones on whose business with the foundry since 1936, Hooper and Byrne now claim commissions. It is now contended, on behalf of Hooper and Byrne, that the rights of the parties, so far as they relate to the validity and construction of the contract and as to the defenses attacking its *Page 141 
validity, are res adjudicata because of the decree in the previous suit.
It is, of course, an elemental principle that there must be an end of litigation over the same controversies, and that any question of law or fact, once decided by a court having jurisdiction, is thereafter conclusively disposed of and cannot be litigated again by the unsuccessful party.
In Nuzzi v. United States Casualty Co., 121 N.J. Law 249
(at p. 259), the court sets forth the legal maxim — "It concerns the commonwealth that there be a limit to litigation."
In the case of In re Leupp, 108 N.J. Eq. 49 (at p. 58), the court said:
"It is a doctrine of universal acceptation that the judgment of a competent court of jurisdiction is, until reversed, final and conclusive upon the parties, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. In re Walsh's Estate, 80 N.J. Eq. 565; Shearman v. Cameron, 78 N.J. Eq. 532; Sarson v. Maccia,90 N.J. Eq. 433; West New York Improvement Co. v. West NewYork, supra; Rosenstein v. Burr, 80 N.J. Eq. 424; Margolies v.Goldberg, 101 N.J. Law 75; Nachamkis v. Goldsmith,101 N.J. Law 356; Cromwell v. County of Sac, 94 U.S. 351; 24 L.Ed. 195;Sawyer v. Woodbury, 73 Mass. 499. This doctrine is not a mere rule of procedure, but one of substantial justice, unlimited in its operation, and the enforcement of which must be exacted whenever it is necessary for the protection and security of rights, as well as for the preservation of the stability and repose of society. City of Paterson v. Baker, 51 N.J. Eq. 49;Putnam v. Clark, 34 N.J. Eq. 532. To do otherwise would be to displace this salutary principle of our jurisprudence and render it of little or no value."
In Robertson v. Robertson, 117 N.J. Law 607, the court said (at p. 608):
"It may be conceded that as a general rule under our cases and the general principle of the doctrine of res adjudicata the plea that the agreement sued on was based on a fraudulent *Page 142 
underlying agreement and that that question was determined in the first action would be conclusive here; and even if the plea were available as a defense, though not raised, it would be equally conclusive." (Citing cases.)
The sole exception, the court said, was in a case charged with a public interest, such as a divorce case.
The foundry corporation contends that it is not bound by the decree in the former litigation on the asserted grounds that the issues raised by it here are not the same as those raised in the previous litigation. Apart from the doubtful right to now set up a defense which it could have but did not set up in the prior litigation, a careful examination of the record in the previous litigation shows that, in fact, the substance of the defense now interposed was asserted and found adversely to it in the prior suit.
The document executed in November, 1932, originally provided simply that the foundry corporation should pay a commission of five per cent. on any business done by it with customers brought in by Hooper and Byrne. This was altered by interlineation, initialed by representatives of both parties, with a provision restricting prices to be charged for casting and providing that Hooper and Byrne should assist in the collection of payments from customers brought in by them. The matter was referred to a special master to report as to who were Hooper and Byrne customers, and the amount of business done by the foundry corporation with them. He found a substantial sum was due and his report was confirmed with certain exceptions not relevant here. A decree was entered for some $18,000, and an appeal was taken therefrom to the Court of Errors and Appeals which affirmed the decree, except as to certain fees and allowances, also not relevant here. The decree, by its terms, covered the sums due on business up to July 21st, 1936, but expressly provided that it should be without prejudice to any right to recover for commissions accruing after that date.
It is contended by the foundry corporation in the instant suit that in fact it was the agreement of Hooper and Byrne that they should "service" the customers in the same manner *Page 143 
as they had actually been doing for several years previously with the foundry corporation and its predecessor, but that service being such a complicated matter, they preferred not to have it written in the document, but that they would always continue to service the customers. That in 1934, Hooper and Byrne failed to service the customers and that therefore the foundry corporation had a right to terminate any obligation. It is also asserted that, by reason of this statement, the foundry corporation was tricked into signing the document and was thereby defrauded.
It appears that until 1934, Hooper and Byrne did service the customers, but that in that year difficulties arose with the foundry corporation, apparently largely by reason of the fact that Hooper and Byrne became interested in another foundry to which they were sending business. The Laytham Company contended that Hooper and Byrne were required to work exclusively for the Laytham foundry and apparently it was because of this that the Laytham corporation refused to acknowledge any further liability and thereupon the first suit was instituted.
It appears from the report of the special master, the opinion of the Vice-Chancellor, the brief on appeal filed by the Laytham corporation, and the opinion of the Court of Errors and Appeals that every possible defense was urged.
The foundry corporation contended before the master that the original contract set forth in the document dated November 26th, 1932, was modified or amended so as to provide expressly for servicing by Hooper and Byrne. The master found that there was no such modification or amendment.
The Vice-Chancellor, in his conclusions, found that the agreement between the parties is embodied in the letter of November 26th, 1932, which necessarily precludes any contention that the agreement was modified. He further expressly found that no such supplemental agreement or modification was made. The charge of fraud was pressed before the Court of Errors and Appeals, and the court found:
"Defendant answered alleging fraud * * * and an affirmative decree for defendant was asked on that account. *Page 144 
When the matter came on to hearing Vice-Chancellor Bigelow found that there was a contract, that complainants had rendered services compensable thereunder and that no defense had been proved * * *."
It seems clear, therefore, from the record in the previous suit that all defenses to the present suit by Hooper and Byrne, so far as they affect the validity of the contract to pay compensation, have been found adversely to the foundry corporation, and the doctrine of res adjudicata applies. It necessarily follows, therefore, that the suit of the foundry corporation praying for a reformation or rescission of the contract must be dismissed. Hooper and Byrne are entitled to an accounting in accordance with the prayer of their bill. *Page 145